IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELIZABETH GAINES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-09-1762 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, | * | |
| Defendant. | * | |

*************************************************************************

## MEMORANDUM OPINION

Plaintiff Elizabeth Gaines ("Gaines") filed this case against Defendant The Guardian Life Insurance Company of America ("Guardian") on July 6, 2009, alleging that Guardian's denial of coverage for Intravenous Immunoglobulin therapy violated the Employee Retirement Income Security Act ("ERISA"). Pending before the Court is Gaines' Amended Motion for Preliminary Injunction (Doc. No. 9), Guardian's Motion for Summary Judgment (Doc. No. 15), Gaines' Cross-Motion for Summary Judgment (Doc. No. 21) and Guardian's Motion in Limine to Preclude Evidence and Arguments Based on Plaintiff's Filing of the Administrative Record (Doc. No. 20). The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motion. The issues have been briefed, and on October 9, 2009, the Court held a hearing on the Motion for Preliminary Injunction. *See* Local Rule 105(6) (D. Md. 2008). For the reasons discussed below, the Court will GRANT Defendant's Motion for Summary Judgment, DENY Plaintiff's Motion for Summary Judgment, DENY Plaintiff's Motion for Preliminary Injunction, and DENY Defendant's Motion in Limine.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Elizabeth Gaines was diagnosed with Relapsing Remitting Multiple Sclerosis ("RRMS" or "MS"), an autoimmune condition for which there is no known cure, in 1988. MS can cause people to suffer a variety of symptoms, most commonly progressive deterioration in walking, muscle control, vision, speech, and cognitive abilities. Gaines has been under the regular care of Dr. Heidi Crayton, a Board-Certified Neurologist and Professor of Neurology at Georgetown University Medical Center for her MS.

From 1999 to 2007 Gaines was treated with Avonex, a member of the interferon drug family. Towards the end of this period, she relapsed and a 2006 Magnetic Resonance Imaging showed active demyelinating plaques. Consequently, Dr. Crayton treated Gaines with 13 infusions of Tysabri, which initially minimized her symptoms, but soon the symptoms reappeared. Next Dr. Crayton treated her with solu-medrol, but this treatment had no effect.

In April 2008, Dr. Crayton decided to treat Gaines with Intravenous Immunoglobulin (IVIG) therapy. Before beginning this treatment, Dr. Crayton called Gaines' insurance benefits company to inquire about coverage. Gaines works for the National Treasury Employees Union and receives group health insurance coverage through The Guardian ("Guardian"). The Guardian preauthorization unit informed Dr. Crayton that she did not need preauthorization to treat Gaines with IVIG. In June 2008, Dr. Crayton, through Tyson's Therapeutics, gave Gaines her first infusion of IVIG, and has continued at least through October 2009. Under this treatment, Gaines' RRMS symptoms have decreased significantly and she and Dr. Crayton feel she must continue this treatment to avoid health deterioration.

On August 8, 2008, however, Guardian informed Tyson's Therapeutics, the infusion

service provider, that it would not cover IVIG treatment for Gaines' case of MS. Gaines and her doctor objected to this decision and believed Guardian's decision was premeditated to deny Gaines medically necessary treatment due to its expense, as IVIG ranges in cost from $7,000 to $7,600 per dosage, and a dosage must be given every twenty-eight days. Dr. Crayton appealed Guardian's denial in a letter dated August 19, 2008, and repeated the appeal on September 25, 2008, having received no response to the original letter.

In a letter dated November 3, 2008, the Guardian Group Claims Department denied Dr. Crayton's request, on the ground that there was no proof Gaines had tried Copaxone. Gaines responded that it was medically necessary for her to continue with the IVIG treatment because there would be a six-month lapse before the Copaxone could become effective, during which time her health would deteriorate, and furthermore, that Copaxone would not stymie the decline in her health as the IVIG did.

Dr. Crayton then requested an external review through the Washington, D.C. Department of Insurance, which Guardian had offered in its denial letter. Guardian granted this request for external review. The external reviewers, or Independent Peer Review Organization (IPRO) denied her appeal on February 12, 2009. On February 19, 2009, Guardian affirmed its denial of coverage on the basis of the external reviewers' decision.

Via fax on February 23, 2009, Plaintiff's counsel renewed his request for Guardian documents. Guardian denied this request two days later. Gaines' counsel then renewed his request again on March 5, 2009, and Guardian responded by providing some of the requested documents. Then, on May 28, 2009, Gaines made another request for an appeal, based on additional records she filed, but Guardian refused.

3

On July 6, 2009, Gaines filed a Complaint with this Court claiming 1) that Guardian violated ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), by denying coverage of IVIG treatment, because the treatment is "medically necessary" under Guardian's Plan; and 2) Guardian violated ERISA § 503, 29 U.S.C. § 1133, because it failed to provide her a timely full and fair review of her claim for benefits that included consideration of all evidence submitted and written notice setting forth the complete basis for denial of benefits. Gaines requests a declaration that Guardian is obligated to provide her coverage for her IVIG treatments.

On September 2, 2009, Gaines filed the pending Amended Motion for Preliminary Injunction. On September 21, 2009, Guardian filed a Motion for Summary Judgment. On October 8, 2009, Plaintiff cross-moved for summary judgment, and Defendant filed a Motion in Limine to Preclude Evidence and Arguments based on Plaintiff's Administrative Record.

## II.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). When parties file cross motions for summary judgment, the Court must view each motion in a light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar

4

evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III. ANALYSIS

The Court first addresses the cross-motions for summary judgment, then Plaintiff's motion for preliminary injunction, and finally Defendant's motion in limine. Because the Plaintiff incorporates her Motion for Preliminary Injunction into her Cross-Motion for Summary Judgment, the Court addresses many of her substantive arguments in the first section of this Opinion. The Court believes that Guardian did not abuse its discretion in denying coverage for IVIG treatment.

### a. Cross-Motions for Summary Judgment

Pursuant to the Employee Retirement Income Security Act ("ERISA"), an employee can bring a civil action to recover benefits due under an employee welfare benefit plan. 29 U.S.C. § 1132 (a)(1)(B) & (e). The denial of benefits under an ERISA plan must "be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the administrator or fiduciary is given discretionary power under the plan, his decisions are reviewed for abuse of discretion and will not be disturbed if they

are reasonable." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995). An administrator's decision is reasonable if it is "'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Id.* at 788 (citation omitted). "Substantial evidence is the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that 'a reasoning mind would accept as sufficient to support a particular conclusion.'" *Donnell v. Metro. Life Ins. Co.*, No. 04-2340, 2006 WL 297314, at *4 (4th Cir. Feb. 8, 2006) (citation omitted).

The abuse of discretion standard applies to this case as the Plan clearly grants Guardian discretion, stating, "Medical Necessity [is] a service or supply determined by us to be," in accordance with several factors. (Docket No. 9, at 13, 15.) In reviewing an administrator's decision for abuse of discretion a court:

> may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 342-343 (4th Cir. 2000). "[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of the closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Metro. Life Ins. Co. v. Glenn*, 544 U.S. 2343, 2351 (2008).

As a preliminary matter, Guardian concedes that it has a conflict of interest since it both pays and adjudicates claims. (Doc. No. 15 at 15.) Thus the Court reviews this case, understanding that a

conflict of interest exists. "[A] conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'" *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008) (internal quotation and citations omitted).

The Court now turns to the issue of whether the supplemental records that Gaines filed after the results of the external appeal constitute part of the administrative record. A Court must generally confine its review of an ERISA denial of plan benefits to the administrative record, consisting of documents that were before the plan administrator when it made its decision. *See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) ("an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time"). Gaines argues that the administrative record must include the documents she submitted with her May 28, 2009, request for an appeal, which consist of statements under oath by Dr. Crayton indicating IVIG treatment is medically necessary for Gaines, letters from two doctors describing IVIG's benefit, and treatment guidelines from Aetna, CIGNA, BlueCross and United Healthcare approving coverage of IVIG treatment for MS. These documents are, according to Gaines, the sort of "comments, documents, records, and other information submitted by the claimant relating to the claim," that the ERISA Rules and Regulations require plan administrators to review, "without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. 2560.503-1. Guardian argues that "submissions Guardian received from plaintiff's counsel after the decision on external review, which were never considered by any of the reviewing physicians, are not part of the administrative record and may not be considered." (Doc. No. 15 at 17.) Gaines claims that she made this submission only eighty days after getting the documents from Guardian, and that

7

Guardian should thus have considered those documents.

It appears that the Fourth Circuit has not ruled squarely on the issue of whether documents filed after the results of an external appeal constitute part of the administrative record, and Gaines and Guardian rely on opposing decisions from district courts in the Fourth Circuit for their positions. Gaines urges the Court to adopt the Fifth Circuit's standard on this issue, which Judge Davis followed as a district court judge, explaining:

> The Fifth Circuit's reasoning is sound: "if the claimant submits additional information to the administrator, and requests the administrator to reconsider its decision, that additional information should be treated as part of the administrative record." *Bratton*, 215 F.3d at 521 n.5 (citing *Vega*, 188 F.3d at 300). Such reasoning encourages attorneys for claimants to make a good faith effort to resolve the claim with the administrator prior to filing suit in district court and affords a safeguard against possible abuse or mistake by the administrator. *See Vega*, 188 F.3d at 300; *Bratton*, 215 F.3d at 521 n.5.

*Brodish v. Fed. Express Corp. Long Term Disability Plan*, 384 F. Supp. 2d 827, 835 (D. Md. 2005). Defendant relies on a district court case from North Carolina, decided before *Brodish*, for its proposition that the administrative record cannot include documents beyond what the administrator reviewed in its last formal appeal. *See Barnes v. Bellsouth Corp.*, 2003 U.S. Dist. LEXIS 18766 (W.D.N.C. Oct. 20, 2003) ("when a court reviews the administrator's decision under an abuse of discretion standard, modified or unmodified, the court is limited to the evidence before the plan administrator at the time when he made his decision."). This Court agrees with the *Brodish* court's logic, and accordingly will consider the records Gaines submitted to Guardian on May 28, 2009, part of the administrative record. The Court makes this finding relying on the logic of the *Brodish* opinion, and also on the fact that the Plan does not instate a time limit on Plaintiff's ability to submit additional information, other than granting the claimant 180 days to appeal, which Plaintiff did.

But, the Court makes this finding regarding the administrative record in conjunction with the

8

finding that the additional scope of the administrative record in this case does not alter the Court's conclusion, described below, that Guardian did not abuse its discretion in denying benefits in this case. The Court is convinced by Defendant's argument that the supplemental materials Plaintiff submitted in May 2009 do not warrant remanding this matter for further consideration. The supplement to the administrative record—the new patient information sheet, other insurer guidelines, and letters from other medical consultants, Doctors Munschauer and Richert, and Dr. Crayton's new affidavit—simply do not undermine the well-reasoned decision Guardian had already made on this matter. Dr. Richert, Executive Vice President of the National Multiple Sclerosis Society, observed this treatment had the necessary "demonstrable therapeutic benefit;" and Dr. Munschauer, Chief of the Jacobs Neurological Institute at S.U.N.Y. at Buffalo, stated IVIG is widely used where other treatments have failed. But that information does not override independent reviewers' conclusion that Gaines first had to try Copaxone. Gaines also contends that Guardian ignored the guidelines of four major insurers that show the medical necessity and commercial viability of IVIG for RRMS, but Gaines does not explain why Guardian would have been required to look at these guidelines, and the Court knows of no such requirement. While Gaines contends that "Dr. Crayton's office received pre-approval" for the use of IVIG, it plainly appears in the Plan that Guardian does not use a pre-approval procedure for IVIG treatment. Thus the Court does not believe this evidence weighs in Gaines' favor in showing an abuse of discretion.

Nor does the Court find Guardian violated its contractual obligation to "conduct a full and fair review of an appeal" allowing claimants the opportunity to submit written comments, documents, records and other information. Though Guardian did refuse to consider affidavits, guidelines, and letters from consulting physicians that Gaines submitted to Guardian on May 28,

9

2009, at that time, Guardian had already received the results of the fourth independent review, and had already given Gaines the opportunity to submit documents for those reviews on multiple occasions.

With the preliminary matters of the scope of the administrative record and standard of review determined, the Court now turns to the parties' arguments in support of summary judgment. Guardian moves for summary judgment on the grounds that independent Board-certified physicians and the District of Columbia Department of Health Independent Review Organization determined that IVIG treatment was not medically necessary for Ms. Gaines, and that Guardian's determination of the same was reasonable. Gaines cross-moves for summary judgment on the grounds that Guardian abused its discretion by 1) ignoring evidence showing that IVIG treatment is medically necessary, 2) refusing to review all information submitted, 3) refusing to identify medical experts consulted, and 4) the independent experts did not receive the full record.

The Court believes that, as a matter of law, Guardian did not abuse its discretion in finding that IVIG was not medically necessary in Ms. Gaines' case. First, the record clearly shows that four Board-certified neurologists confirmed that IVIG treatment was not medically necessary for Ms. Gaines under the Guardian Plan ("Plan"). First, a physician, Board-certified in Pyschiatry and Neurology, and a member of the American Academy of Neurology with more than 25 years of practice completed an independent review of Guardian's decision on August 6, 2008, based on peer-reviewed literature.[1] Then, on October 29, 2008, a different independent Board-certified neurologist issued a report to Guardian after reviewing the original record in addition to supplemental medical

---

[1] It appears that this initial reviewer overlooked Gaines' history of taking Avonex, but as the other reviewers did not make this mistake, and the first reviewer's reasoning was sound, the Court does not believe this mistake constituted an abuse of discretion.

10

records and letters Dr. Crayton and Gaines submitted, concluding that based on peer-reviewed medical literature and the guidelines established by the American Academy of Neurology, IVIG was not medically necessary. In response to this decision, Gaines retained counsel and brought the case for external review through the District of Columbia Department of Health. On February 10, 2009, the IPRO issued an external appeal determination upholding the decision of Guardian to deny authorization for Gaines' IVIG treatment. Guardian then upheld its original decision. The basis for the unanimous opinion is that the peer-reviewed literature supports use of IVIG only where the patient has failed interferons and Glatiramer. (A.R. 11-12.) While Gaines tried one type of interferon, Avonex, for many years with no success, she did not try the first-line treatment Copaxone. It is undisputed that Copaxone is an FDA-approved first-line treatment for RRMS, and that IVIG is an off-label treatment for it.

Though Plaintiff's treating physician, Dr. Crayton, states that IVIG is medically necessary for Ms. Gaines, the independent medical reviewers considered her opinion in conducting their analyses and were not persuaded by it. As "ERISA does not impose a treating physician rule, under which a plan must credit the conclusions of those who examined or treated a patient over the conclusions of those who did not," Dr. Crayton's affidavits cannot outweigh the neutral opinions of four independent reviewers. *See White v. Sun Life Assurance Co. of Canada*, 488 F.3d 240, 254 (4th Cir. 2007); *see also McCready v. Standard Ins. Co.*, 417 F. Supp. 2d 684, 702 (D. Md. 2006) ("A preference for treating physicians' opinions is not found under ERISA."). In any case, even where medical experts present conflicting opinions, the administrator has some discretion to choose amongst them. *See Webster v. Black & Decker (U.S.) Inc.*, 33 Fed. App'x. 69, 75 (4th Cir. 2002) ("It is well-established, however, that 'it is not an abuse of discretion for a plan fiduciary to deny . . .

benefits where conflicting medical reports were presented.' In fact, we have recognized that it is the Plan Administrator's responsibility to resolve conflicting medical assessments.") (citation omitted).

Gaines' various gripes with the procedure Guardian followed in denying coverage for IVIG treatment do not amount to violations of ERISA requiring remand or denial of summary judgment to Defendant. Plaintiff contends that Guardian ignored the evidence she presented, misquoted journal articles, and modified the Independent Reviews, but the Court finds no evidence of such behavior in the record. Plaintiff does not provide evidence that Guardian actually modified the Independent Reviews. Of course, in adopting the Independent Reviews, Guardian summarized and interpreted them, but this selective incorporation does not amount to revision of the Independent Reviews themselves. Defendant notes that Plaintiff has not identified any materials or pertinent medical records she submitted for review by IPRO that IPRO failed to review according to its final decision letter.

Nor does Gaines show evidence that Guardian violated ERISA by failing to provide her with sufficient information regarding its decisions, as the record shows Guardian sent her memos explicating its decisions, which met ERISA standards. Gaines contends this case is similar to *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685 (7th Cir. 1992), where the court affirmed summary judgment in favor of the beneficiary because of the plan's failure to detail the rationale for denial of benefits. In that case the decision-maker failed to describe "what evidence the decision-maker relied upon," and did not give the beneficiary "an opportunity to address the accuracy and reliability of that evidence…[to] enable the claimant to prepare adequately for any further administrative review." *Id.* Gaines argues that Guardian's February 25, 2009, denial of her request for documents constituted abuse, and that though she received some of the documents on March 11, 2009, this late delivery

was not sufficient to meet ERISA procedural requirements. Guardian responds that it complied with ERISA procedures as it described the basis for its decision and provided the necessary documents. The Court agrees. As such, the Court will not address Guardian's claim that under D.C. Code Section 44-301.08(i) the "insurer's coverage determination shall be entitled to a rebuttable presumption that it is correct."

Next, Plaintiff argues that "Guardian's Doctors should have been identified so the court could consider the reasonableness of their conclusions." (Doc. No. 21 at 13.) Plaintiff points to a provision of the Plan that provides that in reviewing an appeal, Guardian will "identify medical or vocational experts whose advice was obtained in connection with an adverse benefit determination." (Doc. No. 14, Ex. 2 at 116.) The ERISA Regulations also provide that claims procedures must "[p]rovide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination." 29 C.F.R. 2560.503-1. Guardian explains that "the independent medical consultants who reviewed plaintiff's benefit claim were identified by their medical specialty, board certifications, years of practice, and/or reviewing credentials," and that it is the policy of the Medical Review Institute of America, Inc. ("MRIA") to keep confidential the names of the reviewing physicians, and that the D.C. Code and regulations do not require it. (Doc. No. 24 at 23.) The parties have not presented any cases directly addressing this issue and this Court does not know of any. In the absence of any contrary authority, the Court believes that the statute's plain language requiring identification of a medical consultant compels an administrator to reveal more than merely the consultant's qualifications. This interpretation is reflected in the U.S. Department of Labor's Compliance Assistance Group Health and Disability

13

Plans guide. *See* U.S. Department of Labor, *Compliance Assistance Group Health and Disability Plans* (Oct. 2008), *available at* http://www.dol.gov/ebsa (explaining that "consistent with the procedural requirements of [29 C.F.R. § 2560.503-1], the plan must provide the identity of any such experts when requested by a claimant in connection with an adverse benefit determination," and that "providing the name of the company employing the expert or the qualifications of the expert would not, in the Department's view, satisfy this requirement of the regulation"). Thus, the Court believes that Guardian should have provided some sort of further identifying information of at least one of the medical consultants, upon Plaintiff's request. *See id.*

The Court does not find, however, that this failure to provide the name requires a remand or denial of summary judgment. Guardian has substantially complied with ERISA's identification requirement and in any case, Gaines has not shown how lack of access to the names of the reviewing physicians has deprived her of an appropriate claim decision. Because Plaintiff has not shown how identification by credentials, rather than identification by name, has negatively impacted her claim review, the Court will not remand or deny summary judgment on this basis alone. *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 238 (4th Cir. 1997) ("Were the regulations to be strictly construed as written, then, due to these procedural defects, Ellis did not receive a full and fair review. What is not written, however, but what is implicit in their nature, is that there must be a causal connection between these defects and the final denial of a claim.")

Next, Plaintiff argues that Guardian never sent the Plan language to the independent reviewers and thus the reviewers' evaluations of Guardian's denial ignore the plain language of the Plan. But, the record shows that Plaintiff's counsel provided the definition of "medically necessary" in a December 29, 2008, letter (Doc. No. 14, Ex. 3 at 100), and that the IPRO decision specifically

lists this letter as one of the documents reviewed by the two independent reviewing neurologists. (Doc. No. 14, Ex. 3 at 175.) Moreover, the Court agrees with Defendant that in any case, the reviewing physicians evaluated medical necessity in a manner consistent with the Plan definition.

Finally, to the extent that Plaintiff argues that Maryland law requires Guardian to provide coverage for the off-label use of IVIG, the Court agrees with Defendant that the Maryland statute Plaintiff cites is not applicable to this Plan as it was delivered and issued to the National Treasury Employees Union in Washington, D.C., whereas the Maryland statute only applies to health insurance contracts "delivered or issued for delivery in" Maryland. Md. Code Ann., Ins. § 15-804(c)(1).

### b. Plaintiff's Motion for Preliminary Injunction

To obtain the "extraordinary remedy" of a preliminary injunction, a plaintiff must show each of four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374, 172 (2008). Plaintiff asserts that the Court should issue a preliminary injunction requiring Guardian to cover her IVIG treatment as she is likely to succeed on her claim that Guardian abused its discretion by denying her IVIG treatment for MS, and failed to comply with ERISA procedural requirements. Because the Court has granted Defendant Guardian's Motion for Summary Judgment on Plaintiff's claims, the Court must deny Plaintiff's Motion for a Preliminary Injunction.

### c. Guardian's Motion in Limine to Preclude Evidence and Arguments Based on Plaintiff's October 8, 2009, Filing

Defendant Guardian moves the Court, pursuant to Local Rule 105.2(b)'s prohibition on last-minute filings, to preclude Plaintiff from relying on or advancing any arguments derived from Plaintiff's notice of objection to the administrative record for purposes of supporting Plaintiff's Motion for Preliminary Injunction. Because the Court has denied the Motion for Preliminary Injunction on other grounds, the Court will not address this Motion, and instead will deny it as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant's Motion for Summary Judgment, DENY Plaintiff's Cross-Motion for Summary Judgment, DENY Plaintiff's Motion for a Preliminary Injunction and DENY Guardian's Motion in Limine to Preclude Evidence and Arguments Based on Plaintiff's Filing of the Administrative Record. A separate Order will follow.

|  April 30, 2010  |  /s/  |
|---|---|
| Date | Alexander Williams, Jr. |
|  | United States District Judge |